UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-MC-24525-MOORE/Elfenbein

*In re*

**DIEGO GLOZMAN**,

               Applicant,

**Pursuant to 28 U.S.C. § 1782 for
Judicial Assistance in Obtaining
Evidence for Use in a Foreign Proceeding**.
_____/

**ORDER ON DIEGO GLOZMAN'S *EX PARTE* APPLICATION
FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

**THIS CAUSE** is before the Court on Applicant Diego Glozman's *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Application"), ECF No. [1]. The Honorable K. Michael Moore referred this matter to me "to take all necessary and proper action as required by law with respect to the" Application. *See* ECF No. [3]. For the reasons explained below, the Application, **ECF No. [1]**, is **GRANTED**.

**I.    BACKGROUND**

In the Application, Applicant asks the Court to grant him "leave to conduct discovery pursuant to the Federal Rules of Civil Procedure," including serving subpoenas on and taking the depositions of JPMorgan Chase Bank, N.A.; Morgan Stanley Smith Barney LLC; and UBS Financial Services Inc. (the "Discovery Targets"). *See* ECF No. [1] at 1, 12. Applicant notes that he intends to use the discovery "in a marital property distribution proceeding" he filed in Argentina against "his ex-wife Natalia Olga Meta" (the "Argentine Proceeding"). *See* ECF No. [1] at 1; ECF No. [1-1] at 5. Specifically, Applicant seeks "information and documents" from "February 21, 2022 to the present," including "account statements, wire transfer records, records reflecting the

delivery of securities, account opening documents, signature cards, correspondence, and documents evidencing beneficial ownership and asset transfers."[1] *See* ECF No. [1] at 3.

Applicant explains that "after some marital discord" but "before filing for divorce," his ex-wife "initiated a systematic scheme to conceal and divert marital property," which involved creating "offshore corporate structures and trusts in opaque jurisdictions" and transferring or dissipating cash and other assets. *See* ECF No. [1] at 2. Because his ex-wife "refused to provide accounting or documentation regarding the location, disposition, or management of the transferred assets," Applicant "initiated the Argentine Proceeding and sought provisional remedies in Argentina to preserve marital assets."[2] *See* ECF No. [1] at 2. Applicant notes the "Argentine court has already granted a number of" those provisional remedies and that the "discovery sought in this Application is narrowly tailored to obtain records from U.S. financial institutions where accounts directly or indirectly controlled by" his ex-wife "are located." *See* ECF No. [1] at 3. He explains the discovery will enable him "to fully trace and recover" any diverted "marital assets" so that the Argentine court can enforce his "rights in the division of marital property." *See* ECF No. [1] at 7–8.

In the Application, Appellant argues that he meets all four statutory factors for relief under § 1782 because he "is a party in the Argentine Proceeding," he "seeks documentary and testimonial evidence from the Discovery Targets," he intends to use the "documents and testimony from the Discovery Targets to support the Argentine Proceeding," and the Discovery Targets are "financial institutions that conduct business and have offices in this District" (in particular, principal offices

---

[1] Applicant notes he has tried to "limit the requests to significant dollar amounts above" $10,000 where possible. *See* ECF No. [1] at 3; ECF No. [1-1] at 4.

[2] The Argentine Proceeding is a "civil action filed in the National Civil Court No. 8, Buenos Aires, Argentina, Case No. 54327/2025." *See* ECF No. [1] at 2.

in Miami). *See* ECF No. [1] at 5–9. Applicant also argues that the four discretionary factors articulated by the Supreme Court in *Intel Corp.*, v. *Advanced Mico Devices, Inc.*, 542 U.S. 241 (2004), "weigh in favor of granting" the Application. *See* ECF No. [1] at 9–12. Specifically, he argues that none of the Discovery Targets is or will be a party to the Argentine Proceeding, the Argentine court both welcomes and is actively seeking the evidence he seeks through the Application, the Application does not circumvent any Argentine restrictions against U.S. judicial assistance because "there is no evidence of any Argentine law, rule, or legal basis that prohibits or limits" the Application, and the discovery sought is not unduly burdensome or intrusive because it is "the type of information" financial institutions like the Discovery Targets "regularly use and maintain and should have readily available." *See* ECF No. [1] at 9–12. He supports those arguments with the declaration of his Argentine counsel, who avers that "Argentine procedural laws accept the judicial assistance of foreign courts," Argentine courts are "receptive to evidence obtained abroad," and Argentine courts do not have jurisdiction over the Discovery Targets to order them to produce the requested evidence in the Argentine Proceeding. *See* ECF No. [1-1] at 6. The Motion is ripe for review.

## II.    LEGAL STANDARD

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp.*, 542 U.S. at 247. The "history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (emphasis and quotation marks omitted).

"A district court has the authority to grant an application for judicial assistance if the

following statutory requirements in § 1782(a) are met: (1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting § 1782(a)).  Evidence is for use in a foreign proceeding if an applicant "has the practical ability to inject" it into the proceeding and it can "be employed with some advantage or serve some use in the proceeding." *See In re Application of Salem*, No. 23-CV-23186, 2024 WL 4464288, at *10 (S.D. Fla. Aug. 28, 2024) (quotation marks omitted), *R.&R. adopted sub nom. In re Salem*, No. 23-CV-23186-KMM, 2024 WL 4314771 (S.D. Fla. Sept. 27, 2024); *In re Pons*, 614 F. Supp. 3d 1134, 1144 (S.D. Fla.), *aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, 835 F. App'x 465 (11th Cir. 2020). "If these requirements are met, then § 1782 'authorizes, but does not require, a federal district court to provide assistance.'" *In re Clerici*, 481 F.3d at 1332 (quoting *Intel*, 542 U.S. at 255); *see also United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) ("[A] district court's compliance with a § 1782 request is not mandatory.").

"Once the prima facie [statutory] requirements are satisfied, the Supreme Court in *Intel* noted these factors to be considered in exercising the discretion granted under § 1782(a): (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' because 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency

abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is otherwise 'unduly intrusive or burdensome.'" *In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65).  None of these factors is required or automatically dispositive — they simply "bear consideration in ruling on a § 1782(a) request." *See Intel*, 542 U.S. at 264.  In fact, even if a court concludes an application contains "unduly intrusive or burdensome requests," it may still exercise its discretion to grant the application because those specific requests "may be rejected or trimmed." *Id.* at 265.

Finally, though the Supreme Court has not specifically listed it as a factor in the analysis, sometimes courts look at how granting or denying a § 1782 application would impact international comity concerns. That's because "the animating purpose of § 1782 is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *see also In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (noting "the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts").

### III.    DISCUSSION

#### A. Applicant Has Met the Four Requirements of § 1782

As noted above, the four factors set out in the statute govern the first step in the § 1782 analysis. *See In re Clerici*, 481 F.3d at 1331–32.  Here, Applicant has met each of them.

First, an "interested person" is making Applicant's request. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1331.  Applicant is a litigant in the Argentine proceeding, which he initiated. *See* ECF No. [1] at 2, 6.  That makes Applicant a party to the relevant foreign proceeding, and as the

Supreme Court has noted, "litigants are included among, and may be the most common example of, the 'interested persons' who may invoke § 1782." *See Intel*, 542 U.S. at 256 (alteration adopted).

Second, Applicant's request "seek[s] evidence," including the "'testimony or statement' of a person" and the production of "'a document or other thing.'" *See In re Clerici*, 481 F.3d at 1331–32 (quoting § 1782(a)). Indeed, Applicant's request "seeks documentary and testimonial evidence from the Discovery Targets by serving a subpoena upon each entity in substantially similar form as the subpoenas attached" to the Application. *See* ECF No. [1] at 6.

Third, the evidence Applicant seeks is "for use in a proceeding in a foreign or international tribunal." *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. As explained in the Application, the discovery sought is for use in the Argentine Proceeding. *See* ECF No. [1] at 7. The Argentine Proceeding, which "is pending before a conventional civil court," ECF No. [1] at 7, is certainly a proceeding in a foreign tribunal, *see Intel*, 542 U.S. at 249 (explaining that Congress' use of "tribunal" is expansive and "not confined to proceedings before conventional courts, but extends also to administrative and quasi-judicial proceedings."). And the discovery requested is for use in the Argentine Proceeding because Applicant has the practical ability under Argentine law to inject any discovered information related to marital assets into that proceeding to protect those assets by identifying what marital property was diverted, *see* ECF No. [1] at 7, so the information will give Applicant some advantage or serve some use in the proceeding, *see In re Application of Salem*, 2024 WL 4464288, at *10; *In re Pons*, 614 F. Supp. 3d at 1144.

Finally, the entities from which Applicant seeks the evidence reside or are found in this District. *See* § 1782(a); *In re Clerici*, 481 F.3d at 1332. As the Application notes, the Discovery Targets "conduct business and have offices in this District," specifically principal offices in Miami.

*See* ECF No. [1] at 9.  And when a company "has an office and does business in Miami," it is found in the Southern District of Florida for purposes of § 1782.  *See Consorcio Ecuatoriano*, 747 F.3d at 1269.

For those reasons, the Court finds that Applicant has satisfied the four statutory factors under § 1782.

B. **The *Intel* Factors Weigh in Favor of Granting the Application**

Once the statutory requirements are satisfied, the discretionary factors the Supreme Court set out in *Intel* govern the second step in the § 1782 analysis.  *See* 542 U.S. at 264–65; *In re Clerici*, 481 F.3d at 1334.  Here, each of the four *Intel* factors weighs in favor of granting the Application.

First, the entities from which Applicant seeks the discovery are not participants in the foreign proceeding.  As the Supreme Court has explained, "when the person from whom discovery is sought is a participant in the foreign proceeding," the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because a "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.  "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*  The Argentine Proceeding involves Applicant and his ex-wife's "divorce and division of marital property," *see* ECF No. [1] at 10, which is a personal matter unlikely to involve financial institutions as parties.  For that reason, and because the Argentine court cannot order the Discovery Targets to produce the requested evidence, *see* ECF No. [1] at 10, the first *Intel* factor weighs in favor of granting Applicant § 1782(a) aid.

Second, the "nature of the foreign tribunal, the character of the proceedings underway

7

abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all suggest that the Application should be granted. *See Intel*, 542 U.S. at 264; *In re Clerici*, 481 F.3d at 1334. The Argentine Proceeding is a civil matter pending before a conventional court, and Argentine procedural laws are receptive to evidence obtained abroad. *See* ECF No. [1] at 10. In fact, the court presiding over the Argentine Proceeding "is actively seeking" evidence like what the Application requests, including by issuing an August 2025 order "for letters rogatory" requiring the production of other similar information from other financial institutions. *See* ECF No. [1] at 10; ECF No. [1-1] at 20–23, 30. Because the Argentine court would be receptive to this Court's assistance, the second *Intel* factor weighs in favor of granting the Application.

Third, the Application does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334. As noted above, there is no evidence of any Argentine law or rule prohibiting or limiting Applicant's ability to obtain information through a § 1782 application. *See* ECF No. [1] at 10. Indeed, Applicant's Argentine counsel explained that Argentine procedural laws accept the judicial assistance of foreign courts and Argentine courts are receptive to evidence obtained abroad. *See* ECF No. [1-1] at 6. Finally, Applicant cannot procure evidence from the Discovery Targets using Argentine laws or court procedures because the Argentine court does not have jurisdiction over them. *See* ECF No. [1-1] at 6. Because any evidence gathered through a § 1782(a) proceeding will not violate Argentine law or proof-gathering restrictions, the third *Intel* factor weighs in favor of granting the Application.

Finally, Applicant's request is not unduly intrusive or burdensome. *See Intel*, 542 U.S. at 265; *In re Clerici*, 481 F.3d at 1334. The Application seeks information from specifically

8

identified accounts at three financial institutions during a limited timeframe (February 2022 to the present).  *See* ECF No. [1] at 3, 12.  Those accounts are connected to Applicant's ex-wife, "companies and trusts associated with her, and the marital property at issue in the Argentine Proceeding."  *See* ECF No. [1] at 11.  The evidence sought — including account statements, wire transfer records, and beneficial ownership documents — is the type of information that these financial institutions regularly maintain in the ordinary course of business.  *See* ECF No. [1] at 11.  And Applicant has limited the requests to significant dollar amounts above $10,000 wherever possible.  *See* ECF No. [1] at 3; ECF No. [1-1] at 4.  As a result, the Court finds that the § 1782(a) requests are not unduly intrusive or burdensome, so the fourth *Intel* factor weighs in favor of granting the Application.

For those reasons, the Court finds that all four *Intel* factors weigh in favor of granting the Application for § 1782 aid.

### C. Granting the Application Would Further the Policy Underlying § 1782

As a final consideration, the Court evaluates whether granting the application would further the policy underlying § 1782, which is to encourage international comity.  *See ZF Auto.*, 596 U.S. at 632; *In re Pimenta*, 942 F. Supp. 2d at 1289.  Allowing Applicant to marshal the power of our courts to assist him in gathering evidence to use in the Argentine Proceeding aligns with "Congress' wish to strengthen the power of district courts to respond to requests for international assistance."  *See Consorcio Ecuatoriano*, 747 F.3d at 1269 (emphasis and quotation marks omitted).  And it would certainly "encourag[e] foreign countries to provide reciprocal assistance to our courts."  *See In re Pimenta*, 942 F. Supp. 2d at 1289.  As a result, the Court finds that granting the Application would further the international comity concerns that underlie § 1782.

CASE NO. 25-MC-24525-MOORE/Elfenbein

### IV.     CONCLUSION

Because Applicant has satisfied the four statutory factors under § 1782, all four *Intel* factors weigh in favor of granting the Application, and granting the application would further the international comity policy underlying § 1782, it is **ORDERED and ADJUDGED** as follows:

1. The Application, **ECF No. [1]**, is **GRANTED**;

2. Applicant is authorized to issue subpoenas for documents and testimony in the form of the subpoenas attached to the Application as Exhibit C, *see* ECF No. [1-3];

3. Discovery shall be conducted in accordance with the Federal Rules of Civil Procedure;

4. The Court reserves jurisdiction to enter further orders that are necessary and proper to enforce this Order; and

5. Applicant shall file a status report **on or before May 3, 2026**, indicating the status of the discovery identified in the Application and whether this matter may be closed.

**DONE AND ORDERED** in Chambers in Miami, Florida on February 3, 2026.

                                                **MARTY FULGUEIRA ELFENBEIN**
                                                **UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record